In the Matter of the Arbitration between
A/S SILJESTAD, Petitioner,

and

HIDECA TRADING, INC., Respondent and Cross-Petitioner.

No. 81 Civ. 6315 (WCC).

United States District Court, S. D. New York.

Dec. 18, 1981.

Haight, Gardner, Poor & Havens, New York City, for petitioner; Gary D. Sesser, New York City, of counsel.

Healy & Baillie, New York City, for respondent; Raymond A. Connell, John M. Phufas, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Petitioner A/S Siljestad ("Siljestad") is the owner of the vessel "M. S. Solstad." By a tanker voyage charter party dated September 8, 1978, Siljestad chartered the Solstad to respondent Hideca Trading, Inc. ("Hideca") for consecutive voyages. The charter party provided for the arbitration of disputes in New York, and for the entry of judgment by any court within the state on any arbitration award. Pursuant to this provision, the parties proceeded to arbitration to resolve certain disputes, specifically Siljestad's claims (1) for damages for wrongful cancellation of the third voyage of the charter party, plus interest thereon, (2) for interest on the late payment of a demurrage claim in connection with the first voyage under the charter party, and (3) for unpaid demurrage in connection with the second voyage under the charter party, plus interest thereon.

By decision dated July 23, 1981, the arbitrators (1) awarded Siljestad $245,733.51 on the first claim, the entire amount representing damages, (2) awarded Siljestad $27,438.35 on the second claim (representing interest at 14% on $75,273.08), (3) awarded Siljestad $4,188.90 on the third claim (representing $3,110.95 in demurrage and $1,077.95 in interest thereon at 14%), (4) awarded Siljestad $10,000 as attorneys' fees and costs, and (5) provided that the Panel fees and costs, totaling $8,785.90, should be borne 75% by Hideca and 25% by Siljestad. Because of an oversight by the arbitrators, Siljestad's claim for interest on the first claim was not considered.[1]

Immediately after the Panel issued its decision, counsel for Siljestad telephoned the Chairman of the Panel and inquired as to whether the arbitrators had considered Siljestad's claim for interest on the first claim. Realizing their oversight, the arbitrators immediately issued "Appendix B" to the decision on July 27, 1981, which awarded Siljestad $85,429.82, representing interest at 14% on the damage award on the first claim.

To date, Siljestad has not been paid by Hideca in accordance with the Panel's decision. Accordingly, on October 20, 1981, Siljestad filed a petition to confirm the arbitration award in this Court pursuant to 9 U.S.C. § 9. Hideca has cross-petitioned for an order vacating in part the award pursuant to 9 U.S.C. § 10. Three issues are presented:

(1) whether the award of damages on the first claim was founded upon the Panel's manifest disregard of the law of damages;

(2) whether the award of interest on the first claim in Appendix B was a nullity because issued by a panel that was *functus officio*; and

(3) whether Siljestad is entitled to interest from the date of the award to the date of judgment.

Each of these will be addressed in turn.

### I. *The Damage Award*

Before the Panel, Hideca urged the position that any award of damages to Siljestad for wrongful cancellation of the third voyage should be offset by profits gained and expenses avoided as a result of Hideca's breach after the time when Hideca would have completed the voyage. Hideca contended that, if it had performed the voyage, the Solstad would have been returned to Siljestad in the Carribean, there would have

---

1. There is no basis whatsoever for the suggestion by Hideca that the arbitrators might have considered and rejected Siljestad's claim for interest on the first claim. First of all, the opinion of the Panel lists what the arbitrators understood to be Siljestad's claims, including separately stating the claims for interest. That list does not include Siljestad's claim for interest on the first claim. Moreover, the opinion, which discusses in detail each of Siljestad's claims and which awarded interest at 14% on those claims in which the Panel acknowledged that Siljestad was seeking interest, sets forth no reason for denying interest on the first claim. Finally, any doubt as to the matter is laid to rest by the affidavit of Frank L. Crocker, Chairman of the Arbitration Panel in question, who acknowledges that the arbitrators inadvertently failed to consider Siljestad's claim for interest on the first claim.

been no commercially acceptable cargoes for the Solstad in that area at that time and thus a ballast voyage back to the U. K.—Mediterranean loading range would have been necessary.

The Panel rejected Hideca's argument as follows:

"The Panel considers this line of reasoning to be tendentious, and holds instead to the view expressed in Owners' brief as 'well-settled,' even at the time of *LeBlond v. McNear*, 104 F. 826, 830–31 (N.D.Cal.1900), aff'd, 123 F. 384 (9th Cir. 1903):

'. . . In an action against the Charterer of a ship for a total breach of his contract, the measure of damages is the net amount that would have been earned by the vessel under the charter sued on, less the net amount earned, or which might with reasonable diligence have been earned, by the vessel during the time required for the performance of the voyage named in such contract of charter . . .'

\*   \*   \*   \*   \*   \*

"The Panel accepts Owners' contention that the most precise formula for calculating damages for wrongful cancellation of a voyage charter is set forth in the opinion of the U. S. Court of Appeals in *Venus Shipping Co. v. Wilson*, 152 F. 710 (2d Cir. 1907) in which the Court approved a damage calculation providing that damages equal the total earnings of the cancelled voyage, less the product of the number of voyage days of the cancelled voyage, less idle days, times the total earnings of the actual voyage, divided by the number of actual voyage days. The formula is expressed arithmetically in this case as follows:

$$\text{Damages} = \$390{,}642.05 - \left[ \frac{(22.95 - 9.67)}{22.89} \times \$249{,}770.84 \right]$$

or

$$\text{Damages} = \$390{,}642.05 - \$144{,}908.54 = \$245{,}733.51$$

"The effect of this formula is to give Owners their average daily earnings for the cancelled voyage for the period between the time the SOLSTAD tendered her NOR at Es Sider and the time laytime began to count for the substitute voyage. Thereafter, Owners are given their average daily earnings for the cancelled voyage minus their average daily earnings under the substitute charter for the balance of the period that would have been consumed by the cancelled voyage."

Hideca contends here that the decision of the Panel was in "manifest disregard" of the "cardinal rule of the law of damages" "that damages are to be compensatory." The contention is frivolous.

■ An arbitration award based upon "manifest disregard" of the law will not be enforced. See, *e.g.*, *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577 (2d Cir. 1967). This principle, however, is strictly limited so as not to frustrate "the basic purpose of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings." *Saxis Steamship, supra* at 582. Thus, it is well-settled that "manifest disregard of the law" presupposes "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir. 1978), *cert. denied*, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1976), quoting from *San Martine Compania de Navegacion, S. A. v. Saguenay Terminals, Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961). The "manifest disregard" standard has been construed to require a showing that the arbitrator understood and correctly stated the law but proceeded to ignore it. *E.g.*, *Reynolds Securities, Inc. v. Macquown*, 459 F.Supp. 943 (W.D.Pa.1978); *Bell Aerospace Co. Division of Textron, Inc. v. Local 516, United Automobile, Aerospace and Agricultural Implement Workers of America*, 356 F.Supp. 354, 356 (W.D.N.Y. 1973), *aff'd in part and rev'd in part on other grounds*, 500 F.2d 921 (2d Cir. 1974);

*Fukaya Trading Co., S. A. v. Eastern Marine Corp.*, 322 F.Supp. 278, 282 (E.D.La. 1971). See *also Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972).

■ Here, while the Panel's decision may fairly be read as simply rejecting as speculative Hideca's contention as to post-voyage mitigation, at most the Panel applied a generally valid measure of damages under circumstances which Hideca argues dictate application of another legal standard. There is nothing to suggest that the Panel did other than apply what it understood to be the appropriate measure of compensatory damages, or in any way disregarded what it recognized as the governing law. In short, there is no basis for Hideca's claim that the arbitrators ruled in manifest disregard of the law of damages.

## II. *Appendix B*

■ It is undisputed that, after a final decision by an arbitrator, the arbitrator becomes *functus officio* and lacks the power to reconsider or amend the decision. See, *e.g., Air Line Pilots Association v. Northwest Airlines, Inc.*, 498 F.Supp. 613, 618 (D.Minn.1980). The rationale underlying this rule is to prevent re-examination of an issue by a nonjudicial officer potentially subject to outside communication and unilateral influence. *La Vale Plaza, Inc. v. R. S. Noonan, Inc.*, 378 F.2d 569 (3d Cir. 1967).

■ However, "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determi-

nation." *La Vale Plaza, supra* at 573. Such is the case here. The July 23 decision of the arbitrators did not purport to be final as to the issue of interest on the first claim; indeed the decision's list of issues makes clear that interest on the first claim was not considered. Thus, Appendix B manifestly did not involve any re-examination of issues previously considered by the Panel, and the rationale of the *functus officio* doctrine is inapplicable.

*Flannery v. Sahagian*, 134 N.Y. 85, 31 N.E. 319 (1892), relied upon by Hideca, is not to the contrary. There the arbitrators issued an award without interest and subsequently issued an award with interest. The court vacated the award of interest. However, nothing in the decision of the arbitrator or elsewhere indicated other than that the arbitrator had reconsidered and amended his determination. By contrast, it is evident here from the July 23 decision that the issue of interest was not considered. Under these circumstances, the law does not warrant the windfall Hideca is seeking.[2]

Accordingly, the Court concludes that the Panel was not *functus officio* as to the issuance of Appendix B.

## III. *Post-Award Interest*

With one exception,[3] the Panel decision does not address the matter of post-award interest. Hideca does not dispute that Siljestad is entitled to post-award interest. What is at issue is the proper rate of interest. Hideca contends that the proper rate is the 9% statutory rate governing post-judgment interest. See 28 U.S.C. § 1961; N.Y.C.P.L.R. § 5004. Siljestad argues that

---

2. One wonders what position Hideca would urge if the facts were such that Hideca had presented a substantial counterclaim to the Panel, and the Panel then issued a decision as to Siljestad's claims without discussing Hideca's counterclaims or including such counterclaims in its list of claims presented.

3. The award does provide that if either party defaults in the payment of the arbitrators' fees, the other party shall correct that default and have the right to recover against the defaulting

party, together with interest of 14% per annum from the date of payment to the date of recovery from the defaulting party. The arbitrators' fees totaled $7,500, and, because of Hideca's default, that full amount was paid by Siljestad. Since the Panel ordered that Hideca was to pay 75% of the fees, Siljestad is entitled to recover $5,625 on this matter, plus 14% interest from the date Siljestad paid the fees until the date Siljestad recovers this amount from Hideca.

the Court is not limited to this statutory rate.

■ Because the arbitration clause which triggered these proceedings appears within a maritime contract, the case is governed by federal maritime, rather than state, law. *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir. 1959). More specifically, in maritime actions the rate of prejudgment interest is governed by maritime rather than state law. *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91 (2d Cir. 1972). Since the arbitration award is manifestly not a judgment, the rate of post-award, prejudgment interest is not governed by N.Y.C.P.L.R. § 5004. "[I]n admiralty the rate of prejudgment interest to be awarded is within the discretion of the trial court in its effort to award full and fair compensation." *Sea-Land Service, Inc. v. Eagle Terminal Tankers, Inc.*, 443 F.Supp. 532, 534 (W.D.Wash.1977). Applying these principles here, the Court determines that Siljestad is entitled to post-award, prejudgment interest at the rate of 14% per annum.

*Conclusion*

The petition to confirm the arbitration award is granted, with interest as specified. The cross-petition to vacate, in part, the arbitration award is denied.

Settle judgment.

SO ORDERED.